[Doc. No. 34]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VICTORIA R. ZIMMERMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ZWICKER & ASSOCIATES, P.C.,<br><br>　　　　Defendant. | Civil No. 09-3905 (RMB/JS) |

**OPINION AND ORDER**

This matter is before the Court on the parties' "Amended Joint Motion for Conditional Certification and Preliminary Approval of Amended Class Action Settlement Agreement" [Doc. No. 34].[1] For the reasons to be discussed the parties' joint motion is DENIED. While the Court is aware of the overriding public interest in settling class action litigation, it may not abandon its duty to make an independent and rigorous analysis of the settlement terms. In re Pet Food Products Liability Litigation ("Pet Food"), ___ F.3d ___, 2010 WL 5127661, at *13 (3d Cir. Dec. 16, 2010)(citation omitted).

Background

Plaintiff filed her complaint on August 5, 2009 and her first amended complaint ("FAC") on August 31, 2009, on behalf of herself and all others similarly situated. Plaintiff alleges defendant

---

[1] Pursuant to 28 U.S.C. §636(c), the parties consented to the jurisdiction of this Court to decide the motion.

violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq. The claim arises out of a July 11, 2009 collection or "dunning" letter defendant sent plaintiff regarding payment of a debt due Chase Bank USA, N.A. and/or Kohl's Department Store. FAC ¶8.[2] The FAC alleges, inter alia, that the July 11, 2009 letter: (1) fails to adequately disclose the amount of the debt; (2) is not specific "in declaring what components are being included in the alleged debt"; (3) "misleads and deceives the debtor that the determination of [the] debt's validity lies with the Defendant"; and (4) "unfairly confuses the debtor." FAC ¶¶10, 14. The FAC also alleges that "[d]efendant's lack of informed involvement constitutes [illegal] flat rating." Id. ¶12. In addition, plaintiff alleges that while disclaiming "lawyer actions," defendant's letter discusses the "lawyer-type counseling" defendant will provide the creditor and this conduct violates 15 U.S.C. §1692e and/or 15 U.S.C. §1692f. Id.

The FAC alleges defendant is an attorney/debt collector (id. ¶3) and does a "volume" business. Id. ¶19. In addition, the FAC sought to certify a class of "all natural persons within the preceding 12 months to whom the Defendant directed correspondence similar to that received by the Plaintiff alleging that consumer debts were due or owed to third parties." Id. ¶18.

---

[2]The Court has not been provided with a copy of the letter. The letter is not attached as an exhibit to plaintiff's complaint or FAC, and is not included with the parties' motion papers.

The Court held an initial scheduling conference on December 2, 2009. On March 31, 2010, the parties filed their "Joint Motion for Conditional Certification and Preliminary Approval of Class Action Settlement Agreement."[3] Thereafter the parties filed the present amended motion which seeks preliminary settlement approval.

The terms of the proposed settlement are set forth in the parties' "Amended Class Action Settlement Agreement"("Settlement Agreement"). The parties propose a settlement class of all individuals in the United States, Puerto Rico, and Guam who, during the period from August 6, 2008, through the date of the Court's Order preliminarily approving the settlement, were mailed a collection letter by defendant which was not returned as undeliverable. The parties estimate the size of the class to be approximately 800,0000 consumers. In exchange for a release and an agreement not to sue, defendant agrees to pay: (1) a cy pres distribution of $32,289.44 to the United Way Worldwide, designated for financial education activities on a national level; (2) $1,000 to plaintiff for her statutory damages pursuant to 15 U.S.C. §1692k, and an additional $1,000 to plaintiff in consideration for her service to the class; (3) attorney's fees and expenses not to exceed $20,000; and (4) all costs of class administration.

In exchange for the foregoing payments all class members agree to forego their "Released Claims," defined in Article I, Section

---

[3]The original motion was denied as moot on December 6, 2010.

3

1.20 of the Settlement Agreement.  For the plaintiff, the Released Claims include "all claims, actions . . . against Defendant . . . as of the date of [the] Agreement."  As to the 800,000 consumers included in the class, the Settlement Agreement provides they release:

> [A]ll claims, actions, causes of action, demands, rights, damages, costs, attorneys' fees, expenses, and compensation whatsoever that the Class or the Class Members' respective heirs, executors, administrators, successors, assigns, and attorneys could assert against Defendant or any of its principals, members, subsidiaries, and affiliate entities, partners, officers, directors, shareholders, managers, employees, agents, representatives, successors, assigns, insurance carriers, clients, and attorneys as a result of alleged violations of the Fair Debt Collection Practices Act or any state law providing substantially similar protections.

Id. at Section 1.20.2.  As to only the California class members, the Agreement provides:

> In connection with this release, Plaintiff and the Class expressly waive all rights under Section 1542 of the Civil Code of California and any similar law of any state or territory of the United States.  Said section reads as follows:
>
>> 1542.  Certain claims not affected by general release.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Id. at Section 1.20.3.  The Agreement does not release any debts owed to defendant's clients.  Id. at Section 1.20.4.  Defendant's proposed final Order approving the settlement releases defendant from all claims, actions, causes of actions, etc. the class and its

members have against defendant and all of its principles, members, corporate parents, etc. "which now exist or which may hereafter accrue on or before ... (the last day of the opt-out period) relating to or arising out of any alleged violations of the Fair Debt Collection Practices Act or any state law providing substantially similar protections." See Proposed Final Order at 7. The proposed Final Order also provides that after the settlement is approved plaintiff and the class are "forever barred and enjoined from instituting or further prosecuting" against any released party, any claim, etc. plaintiff and the class "now have, ever had, or hereafter may have arising out of or relating to the released claims." Id. at 8.

Discussion

In Smith v. Professional Billing & Management Services, Inc., No. 06-4453 (JEI), 2007 WL 4191749 (D.N.J. Nov. 21, 2007), the Court summarized the applicable legal standard for approving a proposed class action settlement.  Judicial review is a two-step process: preliminary fairness approval and a subsequent fairness hearing.  Jones v. Commerce Bancorp Inc., C.A. No. 05-5600 (RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). See also Manual for Complex Litigation, §21.632 (4th ed. 2006).  (Hereafter "MCL at __ __").  In the first step of the process a court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class.  Jones, at *2.  The

5

preliminary approval establishes an initial presumption of fairness when the court finds: (1) the parties' negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigations; and (4) only a small fraction of the class objected.[4] In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig. ("General Motors"), 55 F.3d 768, 785 (3d Cir. 1995). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." Jones, at *2. Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Id. (quoting In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). See also In re Insurance Brokerage Antitrust Litig., MDL No. 1663, C. A. Nos. 04-5184 (GEB), 05-1079 (GEB), 2007 WL 2589950, at *2 (D.N.J. Sept. 4, 2007) (granting preliminary approval to a class action settlement where there was arm's length negotiations, broad discovery and the settlement agreement was sufficiently fair, reasonable and adequate to warrant sending notice of the action and settlement to the class and holding a full hearing on settlement).

In addition to doing a preliminary evaluation of the fairness

---

[4] A court is not able to evaluate the number of objections to the settlement until after the Class Action Notice is served. This is addressed at the final hearing.

of the settlement in the first step of the judicial review process, it is also necessary to determine if class certification is appropriate. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 621-22 (1997). In this context, some courts make only a preliminary determination that the proposed claims satisfy the criteria set out in Fed. R. Civ. P. 23(a) and at least one of the subsections of Rule 23(b). In re Insurance Brokerage, supra; MCL at §21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)"). Other courts do a more detailed analysis whether class certification is appropriate. See Jones, supra.

Pursuant to Fed. R. Civ. P. 23(e), a court's primary rule is to determine if a class action settlement is "fundamentally fair, reasonable and adequate." Ehrheart v. Verizon Wireless, 609 F. 3d 590, 593 (3d Cir. 2010). "The reason for judicial approval is to ensure that other unrepresented parties (absent class members) and the public interest are fairly treated by the settlement reached between the class representatives and the defendants." Id. at 594 (internal citation omitted). Where, like this case, "settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, ... district courts [are required] to be even more scrupulous than usual when examining the fairness of the proposed settlement." In

7

re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 258 (3d Cir. 2009)(quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004)).  Nevertheless, despite the court's role, there is a strong judicial policy in favor of class action settlements which results in a circumscribed role for the court in settlement review and approval proceedings.  Ehrheart, 609 F. 3d at 594-95.

Although the Court's role in evaluating the fairness, reasonableness and adequacy of the parties' proposed settlement is circumscribed, especially at the preliminary approval stage, the Court will nevertheless deny the present motion.  The Court finds that the proposed settlement is so obviously deficient that it will not be approved.[5]

There are several reasons the Court will not approve the parties' proposed settlement.  One, the proposed class definition is indefinite and overbroad.  Two, there is a phantom benefit to the class but yet the class is required to release their FDCPA claims.  Three, the scope of the proposed release and agreement not to sue is over inclusive.

---

[5] Even though the preliminary approval analysis set forth by the Third Circuit in General Motors, supra, is not rigorous, there is no bar to conducting a more thorough analysis at the preliminary approval stage.  Motions for preliminary approval of a class action settlement, especially before the class is certified pursuant to Fed. R. Civ. P. 23, are not perfunctory. See, e.g., In re California Micro Devices Sec. Litig., 168 F.R.D. 257 (N.D. Cal. 1996). If a proposed settlement appears obviously deficient, the ruling should be issued before rather than after the parties incur the administrative expense to publish notice to the class and handle any objections.

The Court will first address the parties' proposed class definition. As to this issue the Third Circuit recently cautioned that the issue deserves close scrutiny:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial. But other specifications of [Rule 23]--those designed to protect absentees by blocking unwarranted or overbroad class definitions demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

Pet Food, 2010 WL 5127661, at *5 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)).

The Court finds that the parties' class definition is too indefinite and overbroad to approve. As proposed by the parties, the class includes anyone who was mailed a "collection letter." The Court cannot preliminarily approve the parties' settlement because the term "collection letter" is not defined in the Settlement Agreement. The Affidavit of Gary T. Shore, defendant's Vice President of Information Technology and Chief Security Officer, does not satisfy the Court's concerns. Shore avers that he identified all consumers to whom defendant caused to be sent a collection letter ("standard initial demand letter") "similar to the one at issue in this litigation." July 1, 2010 Affidavit at

9

¶¶2-3.  See also August 4, 2010 Affidavit at ¶4.  Not having seen the collection letter at issue, and not knowing what criteria Shore used to determine if letters are "similar" to each other, the Court is not able to determine if the criteria for class certification in Fed. R. Civ. P. 23(a) and(b) are met.

The second reason why the Court will not approve the parties' settlement is because the class gives up too much for what they get.  In exchange for releasing hundreds of thousands of potential FDCPA claims, the class only receives a phantom benefit.  In this respect the Court finds that the class is not fairly treated.

As noted, a class action may not be settled without the approval of the court and a finding that the proposed settlement is fair, reasonable and adequate.  Pet Food, at *12.  This is so because "a district court acts as a fiduciary, guarding the claims and rights of the absent class members." Id. (citation omitted).  Further, as noted, courts should pay "heightened attention" in cases like this where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously.  Id. at *5 (citation omitted).  This heightened standard ensures that class counsel has demonstrated "sustained advocacy throughout the course of the proceedings and has protected the interests of all class members." Id. (citation and quotation omitted).

The parties propose that in exchange for no payment, 800,000

consumers release all claims they could have asserted against the defendant "as a result of alleged violations of the Fair Debt Collection Act or any state law providing substantially similar protections." The time period of the Release is August 6, 2008 to the date the preliminary approval Order is signed. If the parties' proposed release language is approved it would lead to inequitable results because the class is not just releasing claims involving defendant's form collection letter. For example, if a class member received defendant's letter and defendant later threatened the consumer with violence if he or she did not pay, the claim would be barred because the settlement requires that every class member release his or her FDCPA claims. The same would be true if defendant mailed a class member a different threatening letter every day for over two years starting on August 6, 2008. In addition, pursuant to the proposed settlement if defendant mailed the class letters and later attempted to collect the debt through third-party contacts in violation of 15 U.S.C. §1692c(b), or threatened class members with arrest in violation of §1692e(4) and (5), the claims would be barred. The broad release the class must give to settle is unfair and unreasonable given the phantom benefit they receive. Further, the parties propose to release defendants from claims (i.e., state law claims) not asserted in the case. It is troubling that plaintiff did not include state law claims in her complaint because they could raise potential class certification

problems (see July 8, 2010 Joint Letter Brief ("JLB") at 2), yet state law claims are included in the parties' release.

A noteworthy case is Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000). In Crawford, the lower court approved a class action settlement involving a class that was mailed Equifax's form debt collection letter. The settlement gave $500 to the plaintiff plus a $1500 incentive award. In addition, Equifax agreed to stop using its letter and to donate $5,500 to a clinic. The settlement did not bar the claims of the class but provided that a class action could not be filed. On appeal the Seventh Circuit reversed and ruled that the settlement should not have been approved. In voiding the settlement the Court noted that by using a class definition so broad that it included anyone who was sent a letter "similar" to the one plaintiff received, the class numbered approximately 214,000. Id. at 882. The court further noted that the class gained nothing yet they lost their right to the benefits of class aggregation. The court concluded, "the fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e)." Id.

The parties' proposed settlement presents a more compelling case for rejecting the settlement than the Court faced in Crawford. Here the proposed class numbers 800,000 consumers, approximately four times the size of the Crawford class. In addition, the

settlement proposes to completely extinguish all FDCPA claims, even those that are presently pending. For the same reasons the settlement was rejected in Crawford, it will be rejected here.

To be sure, a de minimis monetary recovery does not automatically bar a class action settlement. Mace v. VanRu Credit Corporation, 109 F.3d 338, 344 (7th Cir. 1997). Thus, the mere fact that the direct recovery to the class is de minimis (or more accurately non-existent), does not bar the settlement. Nonetheless, under the facts presented herein, the Court finds that it is not fair, reasonable and appropriate to foreclose hundreds of thousands of consumers from pursuing their FDCPA rights in exchange for nothing.

The parties argue the settlement is fair because the FDCPA limits defendant's total nationwide exposure to no more than the proposed settlement amount.[6] The parties contend that since the class is settling for the maximum possible recovery, the settlement should be approved. This argument is premised on the notion that the maximum amount recoverable from defendant arising out of the FDCPA violations in its 800,000 collection letters is 1 percent of its net worth. The parties argue:

---

[6]Pursuant to 15 U.S.C. §1692k(a), individual consumers may recover actual damages and a civil penalty up to $1,000 for violations of the FDCPA. In class actions, each named plaintiff may recover this amount and all other class members may recover up to the lesser of 1 percent of the defendant's net worth or $500,000.

13

> The parties believe that under [a] well-established line of cases no individual plaintiff or class member would be able to obtain more than a single recovery of the maximum damages provided for by the FDCPA. In this case, the settlement provides the most that the law permits. It is therefore appropriate for the release to include all FDCPA claims of any kind that the class may have against Defendant.

July 8, 2010 JLB at 10.

While for present purposes it is not necessary to issue a ruling on the issue, the Court still finds that the law is not as settled as posited by the parties. Case law exists to rebut the parties' argument. For example, in Mace, supra, 109 F.3d at 344, the Court wrote, "if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations." In addition, in Sanders v. Jackson, 209 F. 3d 998, 1002 (7th Cir. 2000), the Court stated, "there is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit, which is exactly what happened to the defendant in this case." See also Balogun v. Midland Credit Mgmt., Inc., No. 1:05-cv-1790-LJM-WTL, 2007 WL 2934886, at *7 (S.D. Ind. Oct 5, 2007)("[T]he Seventh Circuit has held that the FDCPA requires neither a nationwide class, ... , nor a limit on Defendants' exposure to more than one FDCPA class action suit"); Nichols v. Northland Groups, Inc., Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867 (N.D. Ill. March 31, 2006); D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 455 (E.D.N.Y. 1996).

These statements are not surprising after the language in the FDCPA is contrasted with The Truth in Lending Act ("TILA"). The TILA specifically limits the total recovery "in any class action or series of class actions arising out of the same failure to comply by the same creditor [to no] ... more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. §1640(a)(2)(B). The FDCPA does not contain a reference to a "series of class actions." Without deciding the issue the Court in <u>Mace</u>, <u>supra</u>, noted that this might indicate Congress' intent not to limit a defendant's exposure in FDCPA cases the same way it is limited in TILA cases. 109 F.3d at 343.

Given the unsettled nature of FDCPA jurisprudence, the Court will not approve the proposed settlement. If there is even a fair possibility that consumers in other states can obtain a monetary recovery from defendant arising from the collection letters defendant sent out from August 6, 2008 to the present, they should have the right to pursue their claims. The phantom benefit from the proposed settlement is not adequate consideration for the release of tens of thousands of potential FDCPA claims.

Defendant argues that a nationwide class is necessary to prevent it from being subject to "copycat class actions in other jurisdictions, exposing it to potential liability in excess of the absolute limit set by Congress." July 8, 2010 JLB at 3. The Court disagrees. For the reasons already discussed, defendant's

collective nationwide exposure may not be absolutely capped at 1 percent of its net worth. Further, the Court agrees with the view that an FDCPA class does not have to include all potential plaintiffs. Sanders, 209 F.3d at 455 ("[W]hile a class may be national in scope, the plain meaning of the FDCPA does not require that the largest potential class be certified"). See also D'Alauro, 168 F.R.D. at 455. In addition, the one-year statute of limitations in the FDCPA limits a defendant's FDCPA liability if it takes prompt measures to correct FDCPA violations. Sanders, supra; Mace, 109 F.3d at 324 ("The FDCPA has a short, one-year statute of limitations making multiple lawsuits more difficult"). Thus, defendant's prediction that Congressional intent will be frustrated if the proposed settlement is not approved is fallacious.

The third reason the Court will not approve the parties' settlement concerns the scope of the proposed release. It is troubling that the settlement requires that all present claims, lawsuits, etc. against the defendant "arising out of or related to the same or similar circumstances, transactions or occurrences as are alleged in this case" be barred. Thus, for example, if there are presently pending FDCPA lawsuits in any of the 50 states, Guam or Puerto Rico, the lawsuit would be barred if this settlement is approved. Under the circumstances presented herein, the Court will not approve such a draconian result in the absence of unambiguous authority that defendant's total collective exposure arising from

16

its 800,000 letters is no more than $32,289.44.[7]  The only member of the class who will receive any direct monetary benefit from the settlement is plaintiff who will receive $2,000.  This is so because the parties propose to make a $32,289.44 cy pres payment to the United Way.  It is unlikely that a class member who has a presently pending claim would agree that trading this settlement for his or her own filed claim is fair and reasonable.

Notably, defendant did not advise the Court of the name, location and status of any pending lawsuits or claims that would be barred by this settlement even though the information is undoubtedly available.  Defendant surely is able to catalogue the lawsuits and claims arising from the "collection letters" it sent out between August 6, 2008 and the present.

In defense of its proposed broad release the parties cite to Lipuma v. American Express Co., 406 F. Supp. 2d 1298 (S.D. Fla. 2005).  That case approved a class action settlement which included claims several intervenors argued were not part of the case.  The court approved the settlement because the different claims had "the same underlying factual predicate" and were "transactionally related."  In fact, the court stated that the claims were "one and the same." Id. at 1318.  This is not the case here.  The parties represent that "the proposed class release would cover all alleged

---

[7] For present purposes, the Court accepts defendant's representation that this sum represents one percent of its net worth which is the maximum amount recoverable under the FDCPA. See 15 U.S.C. §1692k(a)(2)(B).

17

violations of the Fair Debt Collection Practices Act or any state law providing substantially similar protections." July 8, 2010 JLB at 9 (emphasis added).[8]  Thus, as the examples previously discussed illustrate, the release is broad enough to include FDCPA claims far afield from the language in defendant's form letter.

Another case the parties rely upon is <u>Perry v. FleetBoston Financial Corp.</u>, 229 F.R.D. 105 (E.D. Pa. 2005).  In <u>Perry</u> the court approved a settlement where the settling class released "all claims that were asserted or that could have been asserted" arising from Fleet's improper access of credit reports.  <u>Id</u>. at 125. However, the release in this case is much broader than <u>Perry</u>. Also, each class member in <u>Perry</u> received a tangible benefit in consideration for their release (two free credit reports and scores) as compared to nothing in this case.

The fact that disgruntled class members may opt out of the settlement class does not cure the deficiencies in the settlement. "[C]ommon sense and empirical study admonish that any belief that a significant number of class members would do so is ill-founded." <u>Acosta v. Trans Union, LLC</u>, 243 F.R.D. 377, 388 (C.D. Cal. 2007). As noted in <u>Acosta</u>:

> Given the absence of direct notice to the majority of class members . . . there are

---

[8]<u>See also id</u>. at 12 ("The parties believe that the proposed class release that is before the court is fair and reasonable in its scope since it releases defendant from <u>any</u> FDCPA liability or similar state law statute for the collection activities directed at the class members") (emphasis supplied).

18

> likely to be a considerable number of such individuals who fail to act for reasons wholly unrelated to apathy or a conscious choice to abstain. For these individuals the Settlement presents an unforgiving whipsaw, releasing [defendants] from all conceivable claims while granting nothing of monetary value in return.

Id. at 394. The Acosta decision summed up this Court's conclusion when it stated that while cognizant that all settlements invariably constitute only "rough-justice," the unacceptable volume and degree of deficiencies compel the Court to conclude that the settlement is not fair. Id. at 386.

Conclusion

In sum, the Court denies the parties' joint motion for preliminary approval of their settlement. The Court finds that the settlement is obviously deficient and that the settlement is not fair, reasonable and adequate to the class. For the reasons discussed, the Court finds that the proposed class definition is indefinite and overbroad, the class gives up too much in exchange for a phantom benefit, and the proposed release and agreement not to sue is over inclusive.

Accordingly, for all the foregoing reasons, it is hereby ORDERED this 10th day of January, 2011, that the parties' Joint Motion for Conditional Certification and Preliminary Approval of Amended Class Action Settlement Agreement is DENIED.[9]

                                              s/Joel Schneider
                                              JOEL SCHNEIDER
                                              United States Magistrate Judge

---

[9] This discussion is not intended to be an exhaustive analysis of all possible objections to the proposed class certification and settlement. Given that this Opinion discusses several reasons why the proposed settlement is obviously deficient, this suffices for present purposes. For example, the Court's discussion does not specifically address whether plaintiff is an adequate class representative in view of his acquiescence in what appears to the Court to be an obviously deficient settlement. In the face of the unsettled nature of the case law, the Court questions whether an adequate class representative would summarily concede that defendant's maximum exposure for all FDCPA violations is one percent of its net worth.